UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**KEANA MONROY-GILL, CHRISTOPHER SCOTT MULLEN, ERIK WASHINGTON, GUSTAVO LEAL, ISMAIL IBRAHIM, KATARINA SCHULZ, ELIZABETH LIZZY FRANCIS, MARIO DUNDAS, OMAR ELFANEK, STEPHEN STRAUB, S. JAMAL STONE, WILLIAM MARTIN III, CENITHIA BILAL, KELSIE BLAZIER, SOLOMON OLORUNTOSI, ROBERT BELPASSO, ASHER VONGTAU,** and **SHAWN MCKIE,** on behalf of themselves and others similarly situated,

        Plaintiffs,

v.

**FRESCO NEWS INCORPORATED** d/b/a Fresco,
**JOHN MEYER,** an individual,
**JONATHAN HAMITER,** an individual,
**JEREMY OGOREK,** an individual, and
**MORGAN BOYER,** an individual,

        Defendants.

---

Case No. 1:17-cv-06743

## MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, AND APPROVAL OF THE FLSA SETTLEMENT

Pursuant to the Court's Order at Dkt. 99, class counsel hereby submits this motion for final approval, additionally noting that class counsel does rely on the briefing submitted in connection with the motion for preliminary approval of the settlement but provides the additional materials submitted herewith in further support.

**I. INTRODUCTION**

Subject to Court approval, the parties have settled this case for $175,000 for the wage claims of former employees of Defendant Fresco, pertaining to an approximately 6-week period, from mid-May until the end of June in 2017, in which they did not receive their wages. Believing that the proposed settlement satisfies all of the criteria for preliminary settlement approval, Plaintiffs seek an order (1) finally certifying the settlement class described below; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Joint Settlement and Release ("Settlement Agreement") attached as Exhibit B to the Declaration of Penn Dodson in Support of Plaintiffs' Motion for Certification of Settlement Class and Final Approval of Class Action Settlement ("Dodson Decl."); and (3) approving the FLSA Settlement.

On February 20th, 2020, the Court took the first step in the settlement approval process by granting preliminary approval, directing that notice be mailed to Class Members, and scheduling the final fairness hearing for April 27th, 2020. [Dkt. 94, ¶ 22]. Due to the coronavirus pandemic, the fairness hearing was rescheduled for May 22nd, 2020. [Dkt. 99]. The members of the class have been notified of the terms of the settlement, the allocation formula, and their right to opt out of or object to the settlement. Two members of the class have opted out of the settlement and no Class Member has objected. *See* Dodson Decl. Now Plaintiffs submit this Memorandum of Law in support of their Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of FLSA Settlement ("Plaintiffs' Motion for Final Approval"). For the reasons stated below, the Court should grant final approval.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Procedural History

On September 5, 2017, Plaintiff Monroy-Gill commenced this action under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). [Dkt. 1].

On May 4th, 2018, after the defendants failed to appear, Plaintiff Monroy-Gill requested the Clerk's Certificate of Default. However, several potential plaintiffs reached out to Class Counsel shortly thereafter. On June 5th, 2018, this firm notified the Court of its contact with these potential plaintiffs and filed a motion to amend the complaint, including class and collective allegations under Federal Rule of Civil Procedure 23 and as a collective action 29 U.S.C. § 216(b), have it re-served on the defendants, and subsequently reassess the status of default. [Dkt. 37]. The Court granted this motion on June 6th, 2019. [Dkt. 38].

Informal negotiations between Class Counsel and *pro se* (at the time) Defendant John Meyer (CEO of the corporate defendant) ensued. On March 18th, 2019 Magistrate Judge Sarah Netburn conducted a Settlement Conference at the United States District Court in Manhattan. Plaintiff Monroy-Gill, her counsel, and Defendant John Meyer were in attendance. The other Plaintiffs, Defendants, and shareholders of the corporate entity were invited to attend as well but did not come. During this conference the salient terms of the agreement were reached. The parties agreed to reduce their agreement to writing subsequently in order to clarify procedures and other terms of the agreement. On November 15, 2019, Plaintiffs dismissed without prejudice from this action Defendants Jonathan Hamiter, Jeremy Ogorek, and Morgan Boyer.

Also on November 15, 2019, Plaintiffs submitted their Notice of Unopposed Motion for Preliminary Approval of Settlement. [Dkt. 91]. Initially the Court denied the motion for preliminary approval, in large part because Defendants were not represented by counsel. [Dkt.

83]. Subsequently, Defendants hired counsel to represent them for the balance of these proceedings.

On February 20, 2020, the Court granted the parties' amended motion for preliminary approval. [Dkt. 94]. Since then, four additional eligible class members have returned Claim Forms. [Dkts. 95, 96, 100, and 101]. Two individuals submitted "opt out" notices. On April 22nd, 2020, the Court directed that this Motion for Final Settlement Approval be submitted by Friday, April 24th, 2020, in advance of the Final Fairness Hearing that was scheduled to take place on Monday, 27th, 2020. [Dkt. 98]. Later that day, the Court rescheduled the fairness hearing to May 22nd, 2020, and directed the plaintiffs to file their Motion for Final Approval of the Settlement by May 15, 2020. [Dkt. 99].

B. **Factual Background**

Fresco News Incorporated is or at relevant times was a startup technology company based in New York City. For a period of approximately six weeks (three bimonthly pay cycles) it did not pay its employees, shortly before shutting its doors. The Defendant corporation and its principals, who have been alleged to be joint employers of the plaintiffs for relevant purposes, are all in default. This Settlement, which was reached in principle at a Settlement Conference facilitated by Magistrate Judge Sarah Netburn, held at the United States District Court in Manhattan, fixes the Defendants' liabilities, gives them more than a year to pay the settlement funds, and negates the need to engage in extensive litigation regarding the relatively straight-forward issues involved in the case.

III. SUMMARY OF THE SETTLEMENT TERMS

A. *The Settlement Fund*
The Settlement Agreement creates a fund of $175,000 ("the Fund"). Defendants are to pay this amount into Class Counsel's trust account on or before eighteen months after the

judgment becomes final. In the event Defendants fail to pay this amount by this date, an escrowed Confession of Judgment may be filed against the two remaining Defendants. In this, the two Defendants will be liable for the full (as opposed to a compromised) amount owed to each individual who is either a named or opt-in Plaintiff or who timely submits a Claim Form, as well as various other penalties and fees.

The Fund covers Class Members' awards, the named plaintiff's service award, attorneys' fees, and litigation costs. Funds remaining, if any, after all disbursements, shall be distributed to an appropriate *cy pres* recipient.

B. **Eligible Employees**

The Class consists of all individuals who worked at Fresco at any time from May 1, 2017 to July 1, 2017 and were not one of the Defendants or among the company executives. Attached to the Settlement Agreement is a list of 33 relevant employees that Defendants have stated under oath to be a complete list and who comprise the maximum extent of those against whom Defendants would seek to claim a release of claims. In order to receive a payment, class members must submit a Consent Form (unless they are already a named or opt-in plaintiff). There are 16 plaintiffs. 4 additional class members submitted claim forms.  Only two individuals opted out, one of whom is the sister of Defendant Meyer. 20 participating claimants out of a pool of 33 is just over 60%. Relative to many class and collective actions, this is a very large percentage and therefore represents an indication of success in reaching the affected employees.

C. **Release**

The Settlement Agreement provides that the Defendants will get a full release of the Class Claims for all eligible class members, even as against those who are not eligible to receive process to this settlement (because they are not plaintiffs or did not submit a Claim Form), other

than the two who affirmatively opted out. The "Class Claims" are the New York Labor Law wage claims that have been raised as class claims pursuant to Fed. R. Civ. Proc. 23. Fair Labor Standards Act (FLSA) claims are not subject to FRCP 23 class treatment. Therefore, those claims can only be released by anyone who actually participates in the settlement (i.e., the Plaintiffs and anyone else who submits a claim form). However, because the FLSA statute of limitations is a maximum of three years, the risk that anyone will file a separate FLSA action – which could not include an NYLL claim unless that person had affirmatively opted out of the class action – is low. No claims are released for time periods after the applicable time period.

D. **Allocation Formula**

Class members who submit claim forms will receive a share of the settlement fund proportional to the size of their computed claim relative to the total of all computed claims. More specifically, each individual Eligible Class Member's Allocated Share will be calculated using the following Formula:

> **FORMULA**: Each individual Eligible Class Member's Allocated Share will be calculated using the following "Formula":
> a. **Step One:** The maximum claim amounts for each Eligible Class Member are set forth in the Class List spreadsheet attached hereto.
> b. **Step Two**: Add all the Eligible Class Members' claims together to obtain the total amount of claims made by the Eligible Class Members.
> c. **Step Three**:
>   i. If the Net Settlement Fund amount is greater than or equal to the total amount of the Eligible Class Members' claims, each Eligible Class Member shall receive the amount calculated in Step One. All money (if any) remaining in the Reserve Fund upon the expiration of the Claims Administration Period shall be distributed to a cy pres recipient as more fully described below.
>   ii. If the Net Settlement Fund amount is less than the total amount of the Eligible Class Members' claims, then the Net Settlement Fund shall be divided pro rata among the Eligible Class Members. In other words,

$$\frac{\text{The Eligible Class Member's Claim Amount}}{\text{Total of All Eligible Claim Members' Claims}} \times \text{Net Settlement Fund}$$

In other words, the total of the submitted claims is the denominator; the class member's claim is the numerator. That percentage is applied to the net fund remaining after costs (up to $2,000), fees (one-third, or $58,333.33) and the service award to the named plaintiff ($5,000) are taken out, which will be just under $109,666.67 should this court approve the amounts requested in those areas.

Assuming the fees, costs, and service awards are granted as agreed, those who will be receiving funds (i.e. the "Eligible Class Members") will be receiving slightly more than 100% (102.6% to be precise) of the back wages they are owed, not including liquidated damages. (If so few workers were located that the fund were not be fully utilized, the remainder would have gone to an appropriate *cy pres* recipient. However, there are enough participating class members that the full amount of the fund is expected to be used for the intended recipients.)

E.  **Attorneys' Fees and Litigation Costs**

As contemplated in the Agreement, Plaintiffs' counsel are applying contemporaneously herewith for one-third of the Fund as attorneys' fees, and $2,000 for reimbursement of their actual out-of-pocket expenses from the Fund.

F.  **Service Award**

As contemplated in the Agreement, Plaintiffs' counsel are submitting a separate motion for a service award for the Name Plaintiff. The amount requested is $5,000. This amount is standard and reasonable under the circumstances.

IV. CLASS ACTION SETTLEMENT PROCEDURE

Courts have established a defined procedure and specific criteria for settlement approval in class action settlements, which include three distinct steps:

> (1) Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and certification of the settlement class;
>
> (2) Dissemination of mailed and/or published notice of settlement to all affected Class members; and
>
> (3) A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also Newberg* §§ 11.22, *et seq.* This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. The first two steps have been accomplished. With this motion, Plaintiffs request that the Court take the final step.

The parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

> (1) A final fairness hearing will be held on a date that is convenient for the Court, currently scheduled for May 22nd, 2020 (or otherwise at the Court's convenience).
>
> (2) After the final fairness hearing, if the Court grants Plaintiffs' Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment. If no party appeals the Court's Final Order and Judgment, the Effective Date of the Settlement will be 30 days after the Court enters its Final Order and Judgment ("Effective Date").
>
> (3) If a party appeals the Court's Final Order and Judgment, the Effective Date of Settlement shall be the day after all appeals are finally resolved and all payments are received from defendants.
>
> (4) Payment of the Fund must be made to Class Counsel's trust account within 18 months of the Effective Date. Class counsel shall disburse the payments to the appropriate recipients in conformance with the Formula set forth in the agreement as soon as practicable thereafter.

## V. LEGAL ARGUMENT

### A. The Settlement Class Meets the Legal Standard for Class Certification

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v.Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (quoting *In re PaineWebber Ltd. P'ships*

*Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)) (internal quotation marks omitted); *see also* Newberg § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.") The approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)) (internal quotation marks omitted); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (same). Absent evidence of fraud or collusion, where a settlement is achieved through arm's-length negotiations by experienced counsel,"[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. 2007).

1. **<u>The Settlement is Fair, Reasonable, and Adequate.</u>**

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), <u>abrogated on other grounds by</u> *Goldberg v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Although the Court need not evaluate the *Grinnell* factors in order to conduct its initial evaluation of the settlement, it may be useful for the Court to consider the criteria on which it will ultimately judge

the settlement. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of final approval.

### B. Further Litigation May be Complex, Costly, and Long (Grinnell Factor 1).

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid further expense and delay and maximize their chances for a recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), aff'd sub. nom. *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

In this case, where the basic facts were largely undisputed, continued litigation served no one. Determining reasonable terms by which a settlement might be had was preferable for all. Therefore, the first *Grinnell* factor weighs in favor of final approval.

### C. The Reaction of the Class (Grinnell Factor 2).

No class members have submitted objections. Two have opted out, one of whom is the sister of Defendant Meyer. More tellingly, approximately 60% of eligible class members have

taken affirmative steps to participate in this settlement. For a class action this is a high percentage. This indicates strong support.

### D. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (Grinnell Factor 3).

The parties did not engage in any formal discovery, but in conjunction with this settlement Defendants have produced calculations of wages owed to each released class member. The numbers contained therein are extremely similar to the estimates provided by the lead plaintiff. Ultimately the facts of nonpayment and rates of pay were not in dispute and are essentially the only pieces of information needed for the claim.

The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537. In context, the parties' needs for discoverable information was low and therefore meets this standard. This factor weighs in favor of final approval.

### E. Plaintiffs Would Face Significant Risks if the Case Proceeded (Grinnell Factors 4 and 5).

Although Plaintiffs' case is strong, it is not without risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (quoting *Marisol A. v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999)) (internal quotation marks omitted).

Here, the structure and timing of payment in a case against an entity that is currently not operating alleviates at least some of the risks that would have been present had the case proceeded. This factor weighs in favor of final approval.

### F. Establishing a Class and Maintaining it Through Trial Would Not Be Simple (Grinnell Factor 6).

The risk of maintaining the class status through trial is also present. Defendants could argue, for example, that the class should be decertified based on the fact that the named plaintiff had a different title and pay rate than other class members.  Risk, expense, and delay would permeate such a process. Settlement eliminates this risk, expense, and delay. This factor favors approval.

### G. Defendants' Ability to Withstand a Greater Judgment Is Not Assured (Grinnell Factor 7).

A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9). Here, the Settlement Agreement minimizes the risk of collection by requiring Defendants to pay the Fund into escrow by a certain time, and penalties for nonpayment in the forms of an escrowed confession of judgment provide an incentive to maintain the payment timing.  If Defendants had been forced to pay even the agreed amount (much less a greater recovery) all at once, such judgment may have had the net effect of making recovery for the employees less, rather than more, likely.  Accordingly, this factor favors final approval.

### H. The Settlement Fund is Substantial in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8,9).

The $175,000 settlement amount represents a good value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal. Each Class Member will receive a payment based upon his or her potential claim. By Class Counsel's calculations, the settlement represents a significant percentage of the recovery that Plaintiffs would have achieved had they prevailed on all of their claims. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is more than reasonable.

"[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 U.S. Dist. LEXIS 11450, at *34-35 (E.D.N.Y. May 17, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"); *Brooks v. Am. Export Indus., Inc.*, No. 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313, at *16-18 (S.D.N.Y. Feb. 17, 1977) (approving settlement of less than 1% of the best possible recovery). The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Moreover, when settlement assures immediate payment of

substantial amounts to class members, "even if it means sacrificing 'speculative payment of hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *See Gilliam,* 2008 U.S. Dist. LEXIS 23016, at *5 (quoting *Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*, No. 01 Civ. 11814, 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004)).

I. **Certification of the Rule 23 Settlement Class Is Appropriate.**

Plaintiffs respectfully request that the Court certify the following Fed. R. Civ. P. 23 class for purposes of effectuating the settlement: all non-management employees who worked at Fresco at any time from mid-May until the end of June in 2017.

This Court has already issued an order granting the Motion for Conditional Certification of the NYLL Class and FLSA Collective and appointing AndersonDodson, P.C. as Class Counsel. For purposes of the Release defendants will obtain, the class will include those whose identities are included in their list attached to the agreement and any other eligible employees who submit claims forms.

J. **Approval of the FLSA Settlement Is Appropriate under Federal Law**

Plaintiffs also request that this Court finally approve the settlement of their FLSA claims. As the Plaintiffs' action and claims arise in part under the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"), the parties' settlement must be approved by this Court. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), *Lynn's Food Stores, Inc. v. United States ex. rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982)). In *Cheeks*, the Second Circuit articulated that its rationale for requiring approval is premised largely on the notion that "Low wage employees, even when represented in the context of a pending lawsuit, often face extenuating economic and social circumstances and lack equal bargaining power; therefore, they

are more susceptible to coercion or more likely to accept unreasonable, discounted settlement offers quickly." *Cheeks*, at *17. The Court referred to a number of district court decisions rejecting proposed FLSA settlements containing the following types of provisions: 9 1. Highly restrictive confidentiality provisions (*Lopez v. Nights of Cabiria, LLC*, ––– F.Supp.3d –––, No. 14–cv–1274 (LAK), 2015 WL 1455689, at *3 (S.D.N.Y. March 30, 2015) 2. Overbroad releases (Id.) 3. Attorneys' fees of somewhere between 40%-43.6% of the total settlement payment (Id.) 4. Restriction on a plaintiff's attorney not to "represent any person bringing similar claims against Defendants." *Guareno v. Vincent Perito, Inc.*, 14cv1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014). 5. Economic desperation of the plaintiffs. *Nall v. Mai–Motels, Inc.*, 723 F.3d 1304, 1306 (11th Cir.2013); *Walker v. Vital Recovery Servs., Inc.*, 300 F.R.D. 599, 600 n. 4 (N.D.Ga.2014) *Cheeks*, at *17.

      Here, none of these factors would preclude approval of this settlement. Preliminarily, Plaintiffs were not a "low wage" worker as contemplated in *Cheeks*. However, because the FLSA does not only apply to "low wage" workers, we address the remainder of the issues raised therein. First, there is no confidentiality provision in the Agreement. Second, the release in this case is limited to the claims raised in this lawsuit rather than being a general release of any and all potential claims. Third, if approved as separately requested, the litigation costs will be $2,000 and the attorney fees are one-third of the recovery. Fourth, the Agreement contains no restriction on Plaintiffs' counsel's ability to represent other individuals. Fifth, the settlement was not entered into on the basis of Plaintiffs' economic desperation. The parties have executed a written Settlement Agreement and jointly ask the Court to approve the settlement and dismiss the case with prejudice. The parties represent to the Court that the settlement is a fair and reasonable resolution of a bona fide dispute reached as a result of contested litigation.

FLSA claims are brought as a "collective action," in which employees must affirmatively "optin" to the litigation, unlike the procedure under Federal Rule of Civil Procedure 23. *Ansoumana v. Gristedes Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001) ("[t]here is no opt-in requirement, analogous to the procedure authorized by the FLSA, under the [NYLL]"). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. See McMahon, 2010 WL 2399328, at *6 ("The standard for approval of a FLSA settlement is lower than for a Rule 23 settlement because a FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement."); Khait, 2010 WL 2025106, at *6 (citing *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984)). Accordingly, the high standard for approval of a class action settlement under Rule 23 does not apply to an FLSA settlement.

Both sides desired to settle their claims rather than proceed with protracted litigation. The parties attest to the fairness and reasonableness of their amicable settlement. At least at the end of the litigation in this case, Plaintiffs and Defendants were both represented by counsel. The parties agreed to the terms of this settlement after they were counseled by their respective attorneys. Accordingly, the Settlement Agreement resolves a clear and actual dispute under circumstances supporting a finding of fair and reasonable settlement and is therefore appropriate for final approval.

## VI. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court (1) grant final certification of the class described in the settlement agreement; (2) approve as fair and

adequate the class-wide settlement of this action, as set forth in the Agreement (Dkt. 91-1); and (3) approve the FLSA Settlement.

Respectfully submitted, this **15th** day of **May, 2020.**

A<small>NDERSON</small>D<small>ODSON</small>, P.C.

*/s/ Penn Dodson*

**Penn A. Dodson (PD 2244)**
*penn@andersondodson.com*
Attorney for Plaintiffs

11 Broadway Suite 615
New York, NY  10004
212.961.7639 tel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KEANA MONROY-GILL, CHRISTOPHER SCOTT MULLEN, ERIK WASHINGTON, GUSTAVO LEAL, ISMAIL IBRAHIM, KATARINA SCHULZ, ELIZABETH LIZZY FRANCIS, MARIO DUNDAS, OMAR ELFANEK, STEPHEN STRAUB, S. JAMAL STONE, WILLIAM MARTIN III, CENITHIA BILAL, KELSIE BLAZIER, SOLOMON OLORUNTOSI, ROBERT BELPASSO, ASHER VONGTAU, and SHAWN MCKIE, on behalf of themselves and others similarly situated,

     Plaintiffs,

v.

FRESCO NEWS INCORPORATED d/b/a Fresco,
JOHN MEYER, an individual,
JONATHAN HAMITER, an individual,
JEREMY OGOREK, an individual, and
MORGAN BOYER, an individual,

     Defendants.

Case No. 1:17-cv-06743

---

**DECLARATION OF PENN DODSON, ESQ.**
In Support Of Plaintiffs' Motion for
Final Approval of Class Settlement

I, Penn Dodson, declare as follows:

1. I am at least 18 years old, am competent to write this declaration, and am giving this declaration on the basis of personal knowledge of facts and circumstances stated herein.

2. I have been the lawyer responsible for the prosecution of Plaintiffs' claims on behalf of the proposed class against Defendants.

3. The Order at Dkt. 98 states in part as follows:

   *The motion for final approval should include, as an exhibit, a declaration by class counsel indicating:*
   *(1) the total number of possible class members;*
   *(2) the number of class members who timely opted out; and*
   *(3) the number of class members who timely submitted claims.*

> *[(4)] Class counsel should also attach, as separate exhibits, any written objections to the settlement agreement it h as received. If class counsel has not received any written objections to the settlement, it should state as much.*

4. To each of these I provide the following information:

    a. The total number of possible class members is 33.

    b. Two (2) class members timely opted out.

    c. Twenty (20) class members became "eligible class members," i.e. timely submitted claims, including the original named plaintiff, those who joined at the time of the amended complaint, and the four (4) additional individuals who submitted Claim Forms during the class notice period.

    d. There were no written objections or any indication that any of the eligible class members intend to raise any objections.

I solemnly declare that the foregoing is true and correct to the best of my knowledge, under penalty of perjury.

    Respectfully submitted, this **15th** day of **May, 2020.**

**Penn A. Dodson**
Attorney for Plaintiffs

ANDERSONDODSON, P.C.
11 Broadway, Suite 615
New York, NY  10004
212.961.7639 tel
646.998.8051 fax